

# Fourth Court of Appeals

## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-12-00018-CR

Melvin **MCNEIL**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 290th Judicial District Court, Bexar County, Texas
Trial Court No. 2011CR5788
Honorable Melisa Skinner, Judge Presiding

Opinion by:  Sandee Bryan Marion, Justice

Sitting:  Karen Angelini, Justice
Sandee Bryan Marion, Justice
Patricia O. Alvarez, Justice

Delivered and Filed:  April 3, 2013

AFFIRMED AS MODIFIED

A jury found appellant, Melvin McNeil, guilty on two counts of aggravated robbery. The trial court found the enhancement paragraphs true, and assessed punishment at sixty years' confinement and a $1,500.00 fine. In two issues on appeal, appellant asserts the trial court erred by admitting extraneous-offense evidence and the trial court erroneously entered a judgment of conviction reflecting an affirmative finding that a deadly weapon was used or exhibited during the alleged offense.

**EXTRANEOUS OFFENSE**

Appellant was accused of robbing a Subway Restaurant located in a shopping center, at Blanco and Loop 1604, in San Antonio, Texas, on April 14, 2011.  At trial, the State introduced evidence of a March 24, 2011 robbery of a Church's Chicken restaurant, located at Babcock and Loop 1604, to rebut appellant's defense that the State could not identify him as the man who robbed the Subway Restaurant.  On appeal, appellant asserts this evidence had no relevance apart from character conformity and the danger of unfair prejudice substantially outweighs the probative value of the evidence.

We review a trial court's ruling on the admissibility of extraneous offenses under an abuse of discretion standard.  *Devoe v. State*, 354 S.W.3d 457, 469 (Tex. Crim. App. 2011).  As long as the trial court's ruling is within the "zone of reasonable disagreement," there is no abuse of discretion, and the trial court's ruling will be upheld.  *Id.*  A trial court's ruling admitting extraneous-offense evidence is generally within the zone if there is evidence supporting that the extraneous offense is not relevant to a defendant's character trait.  *Id.*  If the evidentiary ruling of the trial court is correct on any theory of liability applicable to that ruling, it will not be disturbed.  *Id.*

Generally, extraneous-offense evidence is not admissible at the guilt-innocence phase of a trial to prove that a defendant committed the charged offense in conformity with his bad character.  TEX. R. EVID. 404(b); *Devoe*, 354 S.W.3d at 469.  However, this evidence may be admissible when it has relevance apart from its character conformity.  *Devoe*, 354 S.W.3d at 469.  For example, such evidence may be admissible to show proof of identity.  *Id.*  But, evidence of an extraneous offense may be admissible to show identity only when identity is at issue in the case.  *Page v. State*, 137 S.W.3d 75, 78 (Tex. Crim. App. 2004).  The issue of identity may be raised by a defendant during cross-examination of the State's witnesses.  *Id.* (concluding

appellant's identity was at issue after defense counsel cross-examined complainant about appellant's weight). However, merely raising the issue of identity does not automatically render the extraneous evidence admissible. *Page v. State*, 213 S.W.3d 332, 336 (Tex. Crim. App. 2006).

Even if the evidence is relevant apart from its character conformity, it still may be excluded under Rule 403 if its probative value is substantially outweighed by the danger of unfair prejudice. *Moses v. State*, 105 S.W.3d 622, 626 (Tex. Crim. App. 2003); *see also* TEX. R. EVID. 403. At trial here, the identity of the man who robbed the Subway Restaurant was an issue. When, as here, the extraneous offense is introduced to prove identity by comparing common characteristics, it must be so similar to the charged offense that the offenses illustrate the defendant's "distinctive and idiosyncratic manner of committing criminal acts." *Martin v. State*, 173 S.W.3d 463, 468 (Tex. Crim. App. 2005) (quoting *Owens v. State*, 827 S.W.2d 911, 915 (Tex. Crim. App. 1992)). Such extraneous-offense evidence is admissible to prove identity when the common characteristics of each offense are so unusual as to act as the defendant's "signature." *Taylor v. State*, 920 S.W.2d 319, 322 (Tex. Crim. App. 1996). The signature must be apparent from a comparison of the circumstances in both cases. *Bishop v. State*, 869 S.W.2d 342, 346 (Tex. Crim. App. 1993).

At trial, Nicholas Martello, a cashier at the Subway Restaurant, testified a man wearing a white shirt, black pants, a black ski mask, and a glove on his left hand walked into the restaurant at about 10:30 a.m. carrying what later turned out to be a BB gun. Just prior to the man entering the store, Martello testified he saw the man outside without his mask but only for a quick glance. When the man entered the restaurant, he immediately put on his mask and told Martello and another employee of the restaurant, Barry Moore, to get on the floor. The man held, in his right hand, a gun to the back of Martello's head and took about $300.00 in cash and part of the coin

change machine from the cash register.  Barry Moore testified the man held a gun to his face and told him to get on the ground.  On cross-examination, defense counsel questioned Martello at length about his vantage point and ability to see appellant while he was outside.  Defense counsel also pointed out that Martello's statement to the police contained no information about the height, weight, or other description of the man who robbed the restaurant.

The police were able to lift only a partial illegible print from the crime scene.  Surveillance video from the parking lot showed images of the man who robbed the restaurant.  From the video, Detective Justin Good was able to identify the robber's vehicle, a gold Lexus, and later determine it was registered to appellant.  The day after the robbery, Martello identified appellant from a photo lineup.

Appellant's Lexus was later located parked at his girlfriend's apartment.  As appellant was leaving the apartment complex, police conducted a traffic stop and arrested appellant.  On that same day, the police executed a search warrant on appellant's gold Lexus, from which they retrieved a black left-hand glove, a bank money bag, a white shirt, and the left grip of a handgun.  A search of the residence of Jo Ann Garcia, appellant's friend, revealed a bag of his clothes, a change dispenser, and a pellet gun with part of the grip missing.  A ski mask with eyes and mouth openings and a vest were found inside the bag of clothing.  The left grip of the handgun found in the Lexus fit the pellet gun found in the residence. No prints were obtained from the Lexus, the gun, or the gun grip.  No DNA testing was done on the ski mask.

At trial, appellant called one witness in his defense, his girlfriend Louisa Rojas.  Rojas testified appellant "always lent [his] car out" to her or his friends and appellant was a "little bit on the careless side with his things."  She said appellant sometimes loaned his car to his friend "Jose," who is the same height and weight as appellant.

After the defense rested, the State was allowed, over appellant's objection, to present evidence of a March 24, 2011 robbery of a Church's Chicken restaurant. The State presented the testimony of Ricardo and Jeanette Padilla who were both present during this robbery. They both identified appellant as the man who robbed the restaurant. They said he wore a dark colored ski mask and an orange vest, and held a gun in his right hand. On his left hand was a glove. Ricardo said he gave appellant the money in blue Frost Bank bags.

On appeal, appellant concedes the robbery of the Church's Chicken restaurant had similarities to the Subway robbery. We agree the two robberies are similar enough to show the method by which the restaurants were robbed. For example, both robberies were of fast food restaurants located in shopping centers on the north side of San Antonio off Loop 1604, both involved a single male actor wearing a ski mask with one hand gloved and the other ungloved, and the actor in each robbery held a gun in his ungloved right hand. Based on our review of the record, we conclude the evidence of the robbery of the Church's Chicken restaurant was relevant to a fact of consequence in the case (identity) aside from its tendency to show action in conformity with character. Therefore, we next consider whether the probative value of the evidence is substantially outweighed by unfair prejudice.

To determine whether the prejudice of evidence such as an extraneous offense substantially outweighs its probative value we consider (1) how compellingly the evidence serves to make a fact of consequence more or less probable, which is related to the strength of the evidence presented by the State to show the defendant in fact committed the extraneous offense; (2) the potential the extraneous-offense evidence has to impress the jury "in some irrational but nevertheless indelible way"; (3) the time the State will need to develop the evidence, during which the jury will be distracted from consideration of the indicated offense;

and (4) the force of the State's need for this evidence to prove a fact of consequence. *Mozon v. State*, 991 S.W.2d 841, 847 (Tex. Crim. App. 1999).

On appeal, appellant concedes the "fact of consequence" is whether he was the individual who robbed the Subway Restaurant. And, appellant concedes the time the State took to develop the extraneous-offense evidence is not an issue. Therefore, we examine only the second and fourth factors.

Appellant argues the State did not need the evidence to prove his identity and, because of the similarities between the two offenses, the jury could not help but believe the similarities were more than mere coincidence. Appellant also contends the trauma suffered by the Padillas caused the jury to rest its verdict on emotion. We disagree. The Padillas' testimony was not graphic, and the trial court specifically instructed the jury it could only consider the extraneous-offense evidence in determining the identity of appellant, if any, in connection with the offense alleged against him and for no other purpose. Consequently, the extraneous offense was not likely to create such prejudice in the minds of the jurors that they would be unable to consider the evidence for its proper purpose. As to the fourth factor, the State possessed evidence and testimony concerning the identification of appellant as the man who robbed the Subway Restaurant; therefore, the State's need for the testimony was only slight. However, although the State's evidence reduced the State's need for the extraneous-offense evidence, it did not remove it entirely.

Beginning with the presumption that the extraneous-offense evidence was more probative than prejudicial and evaluating it under the Rule 403 factors, we cannot say that appellant was unfairly prejudiced. We therefore hold the trial court did not abuse its discretion by allowing the extraneous offense into evidence.

## AFFIRMATIVE FINDING

Both counts of the indictment stated appellant used and exhibited a deadly weapon. However, prior to trial, the State abandoned the allegation in each count. In its judgment, the trial court included an affirmative finding of a deadly weapon. Appellant asserts, and the State agrees, the affirmative finding was error.

We also agree the trial court erred. This court has the power to modify incorrect judgments. *See* TEX. R. APP. P. 43.2(b). Accordingly, we modify the written judgment to delete the following: "Furthermore, the following special findings or orders apply: DEADLY WEAPON FINDING."

## CONCLUSION

We conclude the trial court did not err in admitting the extraneous-offense evidence. As modified, we affirm the trial court's judgment.

Sandee Bryan Marion, Justice

Do not publish